The next case this morning is 523-0531, People v. Broadway. Arguing for the appellant is Kelly Burden. Arguing for the appellee is Jamie Bella. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning. May it please the court. Go right ahead. My name is Kelly Burden, and I represent Mr. Charles Broadway in this case. First, I would like to address the second issue in his brief, which pertains to his statement, and then I'd be happy to answer any questions about the first issue in this case, which involves the sufficiency of the evidence. Mr. Broadway is an intellectually disabled man with an IQ of 46. He functions at the level of a six- to seven-year-old child. To put in context what an IQ of 46 means in this case, it means that if 1,000 people took an IQ test, 999 people would score above him. A trial court in this case erred when it declined to deny the motion to suppress. The statement in this case should have been suppressed for two reasons. It should have been suppressed because it was involuntary, and it also should have been suppressed as in violation of Miranda. With respect to the voluntariness of Mr. Broadway's statement, his intellectual impairment comes into play. The Illinois Supreme Court and Illinois courts have recognized that a person who has an intellectual disability like Mr. Broadway's are much more prone to acquiescing to police. They're very vulnerable to police coercion, and they are likely to answer questions in a way so as to please the questioner. In this case, it is clear that that is exactly what happened. The police officers exploited Mr. Broadway's disability and essentially got him to agree with the narrative. They continued to press him on questions until he gave the answers that they wanted. The voluntariness of the statement also includes the knowing waiver of right of self-incrimination. In this case, right against self-incrimination. Dr. Cuneo opined that an intellectually disabled person like Mr. Broadway, you could eventually get him to say anything. If you review the video in this case, that's very clear what happened during this interrogation. Probably the most glaring example of this is at the time when Detective Burge is asking Mr. Broadway if he put his finger in the minor LB's vagina. Mr. Broadway had denied this in the interrogation from the get-go. Detective Burge kept pressing him on this, and Mr. Broadway said no. Initially, Detective Burge had suggested to Mr. Broadway that perhaps this was an accident. Mr. Broadway went along with this narrative and stood up and showed how the incident, which stemmed from a camper, when LB, the minor, said she was playing in the camper with Mr. Broadway, her brother, and another adult male that lived in the house, Sonny Broadway. But when Burge suggested that perhaps this was an accident, Broadway pops up in the interview room and says accident, and then demonstrates to the police officers how LB was standing behind him, and he's waving his hands, and he accidentally hits her on her vagina. Burge then turns the narrative from, well, maybe it wasn't an accident. Maybe this was something that was just a mistake, and it only happened one time, and it's never going to happen again. Mr. Broadway, when he asked him if he puts his finger in her vagina, he still says no. And somewhere into about 30 minutes into the interrogation, Detective Burge says this. He says, well, let's do this. He goes, I just need to know if your finger went in her vagina, and he said no. And he said, I just need to know how much went in. And he begins to tell Mr. Broadway, a mean person, an evil person, would put their whole fist in this little girl's vagina, and I don't believe that you're a mean person or an evil person. A little bit might have just gone in there. He never gives Mr. Broadway the opportunity and just doesn't accept his denials. He then has Mr. Broadway put his hand on a piece of paper and traces his finger and says to him, I just need to know how much, and hands him the pen, circle, how much of your hand went into her vagina. Mind you, he had never said any portion of his hand went into the vagina. I'm going to stop you, Counselor. You're referring to the first interview. Is that correct? That's correct, yes. All right. And the first interview, the crux of the arguments, as I see it, are whether the interview was custodial or non-custodial. Is that correct? And whether Miranda was applicable, correct? There's two arguments with regard to the statement. It's whether or not it should have been suppressed as being involuntary and whether or not it should have been suppressed as Miranda. Okay. And you touched on a number of the factors related to the custodial interview, correct? In the briefs, yes. I haven't gotten to it in my argument yet. All right. I'm jumping a little bit ahead. We've got limited time, so I'm sure that might work. I'm jumping a little bit ahead here because I'm trying to get to the crux of a couple of issues that I have. So I think the state, and I don't want to convolute these issues, but I have a couple different questions. I think the state is arguing that Braggs doesn't apply here. Is that correct? The state does argue that, and that is incorrect, that Braggs should apply in this case. Talk to me a little bit about that, if you would, please. And then the custodial interview. Yes. Okay. So this interview was clearly custodial, and Mr. Broderick was never given his Miranda rights. Miranda warnings, rather. Braggs does apply in this case because the police officers in this case knew that he was intellectually disabled and exploited it. And it was a readily discernible characteristic of Mr. Broadway that he was very significantly intellectually disabled. The custodial analysis, the traditional factors, many of them apply in this case, in that he was taken to the police station in a police vehicle, and then he was subjected to a custodial, sorry, an interrogation where he was outnumbered. There were two detectives, and he was by himself. Braggs essentially incorporates, with regard to the mental makeup of the individual, said much like with the juvenile, that the mental makeup of a person who's disabled should be taken into consideration, where the officers knew or should have known of these characteristics. In this case, Detective Burge certainly knew that Broadway was intellectually disabled, and he certainly would have known. And courts can review the video, as this court can, and make their own determination of whether or not his characteristics were readily discernible. Well, in fact, during the interview, it was apparent that the interviewer knew the defendant from previous interactions with him, correct? Yes, that's correct. He did. He knew him. He knew him as a victim. Detective Burge had been involved in a case where Mr. Broadway, the people he was living with were essentially- A debit card or something that was- Yes, stealing from him. And certainly Burge, a seasoned detective, I think was head of the police unit at that time, of 23 years experience, would have known in that investigation that Mr. Burge cannot have a job, needs a payee, is wholly dependent on the state to support him, and the people he was living with were essentially taking advantage of it and stealing from him. So Burge certainly would have known. Also, a review of the video leaves no doubt that the officers must have known of his intellectual disability, the way they talked to him. They talked to him like the six- to seven-year-old child that he functions as, repeatedly telling them that they're not mad at him, he's not in trouble, that, you know, don't lie to us, and words to that effect that, you know, and then rewarding him when he gave the answers they wanted, saying, thank you, thank you. Now we know you're not lying. So the conduct of the officers in the interview room is also relevant to the inquiry of whether or not the officers knew or should have known. And under Bragg's, the Bragg standard is a modified standard and basically takes into account. So the issue is really whether a reasonable person in Mr. Burge's Broadway situation, with the IQ of 46, would have felt free to tell these police officers that he didn't want to have any more questions. Applying that standard, there is no doubt that this interview took place in violation of Miranda. The experts support this, that he wouldn't have known. He does not have the ability to have abstract thinking. He does not understand that he has rights. The court even acknowledged this at the discharge hearing when she tried to admonish him about whether or not he could testify. The circuit court said he doesn't understand, but for what it's worth, he's been admonished of his right to testify. He would not understand that he did not have to answer these police officers questions and that he could stop the interrogation. And for that reason, the interview was in violation of Miranda. It was for many of those similar factors. The interview was also involuntary, and so it could be suppressed under either of these rights. And the error was not harmless in this case, where the child victim gave no testimony in court to support the error and there was no physical evidence. I see my time is up. And I want you to continue, as I'm sure Justice Scholar and Justice Welch is, because what you just said ties into the first argument a little bit. And I don't want you to go on for 10 minutes, but if you could at least briefly talk about that issue, and I'll obviously give Ms. Bella sufficient time to properly address it, too, with the time. So if you would, please address that issue, because I'm sure we're interested to hear your argument on that. Okay. So this error, the state, because the interrogation should have been suppressed, the state must prove beyond a reasonable doubt that this error was harmless. In this case, the child victim in court gave no testimony. She said that she couldn't remember any of the allegations. There was no physical evidence. There were no witnesses to any of the abuse. So the statement coming in was definitely not harmless error. But let's stop for a moment there, if we could. Didn't the trial court specifically state that even without the confession, even without that information, that there was overwhelming evidence? I'm not sure that that's a direct quote, but paraphrasing. Yes. Yes, you're correct, Justice. Initially, before that, the court's findings were essentially that it found the child victim credible in court and her out-of-court statement. And her in-court statement gave no corroboration of any allegations, as I said. But she said, I viewed the video, and I found that Mr. Broadway knew he was in trouble and considered the interrogation as part of her findings. She then went on to say, even without that video. But it is this court's – on this court to conduct an independent analysis, just as it would in the sufficiency of the evidence in this case. So the trial court's findings were error and that this conviction would not be able to stand in this case because of the – all that we have essentially is the victim's – six-year-old victim's outcry statements, which were inconsistent and vague, and the outcry statements to the mother, which appear to have elements of suggestibility. And these statements alone would not be enough to support the conviction, certainly not the convictions of penetration beyond a reasonable doubt. So for these reasons, the error was not harmless. Thank you. Also, before we move on, Justice Schiller, do you have any questions? Not at this time. Okay. Justice Welch? No. Obviously, Ms. Burden, you're going to have your opportunity for rebuttal. Ms. Bella, as I said, if you need a little extra time, we'll gladly give that to you if needed. So go right ahead with your argument. Thank you, Your Honor. May it please the court. Good morning, Your Honors. My name is Jamie Bella on behalf of the people of the state of Illinois. The defendant in this case was charged with two counts of predatory criminal sexual assault and one count of aggravated criminal sexual abuse and seeks reversal on two for alternative reasons. First, because the evidence was not sufficient to support the trial court's finding. And second, because the trial court erred by denying the defendant's motion to suppress his statements. The state respectfully requests that this court affirm the court's finding and will address each of these claims in turn. Turning to the issue regarding the sufficiency of the evidence, the state agrees that the standard of proof required in a discharge hearing is beyond a reasonable doubt, despite the civil nature of the proceedings. However, review of the evidence on appeal is conducted under the Collins standard, which considers whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The state submits that the evidence presented in this case was sufficient to meet that burden. Predatory criminal sexual assault occurs when a person is 17 years of age or older and commits any act, however slight, of contact between the sex organ or anus of one person and that part of the body of another for purposes of sexual gratification and the victim is under 13 years of age or an act of sexual penetration. In both of the counts of predatory criminal sexual assault in this case, the state alleged that the conduct that occurred was sexual penetration. The age elements in this case were not in dispute. As far as the penetration, the defendant argues that there was no evidence of penetration and that none of the statements that the victim made in her interview conveyed penetration. However, the victim in her interview described the defendant touching her on both the inside and outside of her vagina. She stated that defendant often came into her bedroom at night while her parents were sleeping and placed his penis inside her vagina. Stated that she saw something she described as slobber coming out of the defendant's penis and that the defendant put the slobber on the outside and the inside of her vagina. These statements do convey penetration and under the Collins standard, the evidence is reviewed in the light most favorable to the state and any rational inferences that can be drawn from that evidence are also drawn in favor of the state. Defendant's argument that this evidence should be understood to mean that the only contact that occurred was over the clothing suggests that the evidence should be reviewed in the light most favorable to the defense, which is contrary to the Collins standard. The victim did not recall the details of the abuse during her testimony, but she testified that the defendant was the only person who had touched her private area and the victim also recalled being interviewed at the Amy Center and that she reviewed that recording and that all of her statements in that interview were the truth. And let me interrupt you. The trial took place four years after the alleged occurrence, correct? That's correct. She was six years old at the time of the incident and she was 10 years old at the time of her testimony. And I'm correct in stating that the CAC tape was admitted into evidence, correct? Yes, and the trial court had reviewed that video prior to the beginning of the discharge hearing and took judicial notice of it rather than watch it again during the hearing. So he'd watched it that same day. And the trial court stated on the record that they found the child credible, is that correct? Yes, and the trial court's exact words were that she was perfectly credible and that her account of the incident was also credible. Thank you. The victim's mother also testified that when the victim first reported or alerted that when she was first alerted about the incident by her son and spoke with the victim that the victim described defendant rubbing her genital region in a circular motion while in the camper. When Candace, the mother, inspected the victim's genital region, she noted that it was red and the victim disclosed that the defendant comes into her bedroom at night and describes spit coming out of the defendant's penis and that he puts it inside her. This evidence supports the conclusion that there was penetration. There was also defendants recorded interview with police. The state acknowledges that the defendant's second issue challenges the admissibility of this evidence. However, because the trial court. Any any error in its admission, as I'll argue in the second issue, was harmless beyond a reasonable doubt, because the trial court specifically stated that this evidence was not necessary in order to support its finding. However, the defendant did confess to penetration, both digitally and penile penetration during his interview. And you're asking the court not to adopt the Braggs decision here. Is that is that correct? Am I stating that correctly? Correct. Essentially, the Braggs. Let me go to my second issue. The Braggs decision is essentially requires that there be knowledge, as the as counsel stated, knowledge that the defendant was suffering from a mental deficiency. And in the in this case, there's there's kind of a. The defendant had a speech impediment and he answered questions kind of slow, but he also told the officers that he had a high school diploma. He was able to inform the officers of his age, the names of his school and several other pieces of information. So let me go to my I don't mean to stop you there, counsel. But the fact that he had to pull a piece of paper out of his wallet for an address. Should give someone a hint that, you know, he's not fully functioning. Not to mention the fact that I don't think you're disputing that the doctor has said he has a IQ of 46. Yes. I mean, I love the movie Forrest Gump. I watch it every time it's on. But I mean, Forrest Gump is a genius compared to this gentleman. Well, as far as the address, the defendant and they talked about this during the interview. Burge was was aware that the defendant moved around a lot, that he only lived off and on with his brother and hadn't been staying there very long. Given the fact that the defendant had informed him that he had a high school diploma combined with the fact that he's there. Burge knew that he moved around a lot. He knew a lot about Mr. Broadway. Correct. I mean, he had had a lot of dealings with Mr. Broadway. So, I mean, it would be safe to say he knew he was on disability. Various factors. Would that be accurate? He doesn't say specifically in here what it what it what it appears is that he was very familiar with the family, the Broadway family in general, and he spoke many times during the interview about his familiarity with the brother, Mike, Michael, the father of the victim in this case, to the extent that he was aware of any background with the defendant specifically. It was related to a previous financial abuse case that had happened some time prior. And there's no indication that the officer remembered so much about that case that his his first thought would have been that this defendant had the severity of the intellectual disability that he has. He may have considered him to be not above average intelligence, but the fact that he had a high school diploma would kind of cut against the fact a lot of the other facts that are included in the doctor's report about the defendant's disability. And because the Bragg's standard, the modified standard under Bragg's requires that the officer was aware of the severity of this disability, the Bragg's standard wouldn't apply when there's affirmative evidence in the record that there was reason to believe that the severity of the disability was not a factor. But even if the the the the officer was aware and the Bragg's standard did apply, the trial court specifically stated that this evidence from the defendant's interview was not was not important in his determination that the defendant was not not guilty because he found the other evidence to be fully supportive of the allegations in this case. So there would be a harmless that would be a harmless beyond a reasonable doubt. In light of the other evidence that with regard to the victim's testimony and the the victim's statements during her CAC interview, the state submits that the trial court's finding that the evidence was sufficient to support the trial court's finding of not not guilty. I see that I run my time. I I don't recall specifically if the timer was set up. I thought it was set at 12 minutes and I don't want to go on longer than than than you guys would like me to. So I I can stand on the arguments as they're raised in my brief, unless your honors have any specific questions for me. I obviously I mean, this is a you know, an important it's a it's a it's a tough case. Let's let's all be honest. I mean, both sides. So I want to make sure both counsel gets to flush out their arguments properly that my colleagues and I ask any questions. And so therefore, you know, if if we that's a good thing about us, if you run over a little bit, we're going to allow it. So, Miss Bella, if there was something else you needed to say or close up, go right ahead and say it. And obviously we'll we'll accommodate both both sides. I did want to address just briefly. I am not in the defendant's reply brief. The defendant points out that the state's argument for on count three was not included in the brief. This was an inadvertent omission, but the defendant does not argue for forfeiture and the state disagrees that the conclusion. That the defendant's conclusion of the state was not that the state did not dispute the claim as to count three to sustain the charge on that. The only the difference is an act of sexual conduct versus sexual penetration. All of the elements in sexual penetration do satisfy that with this charge. It was referring specifically to the date of August 7th in the camper. And the victim specifically stated in her CAC interview that the defendant touched her and rubbed her vaginal area in a circular motion over her clothing, which is sufficient for sexual conduct under the definition in that statute. If this court is inclined to find that the state forfeited this issue, the state would point out that in cases where no appellee brief is filed at all, the reviewing court can still review that issue if the record if the issue is simple and the record supports the conclusion. And in this case, the the record is simple on this issue and it does support that finding. That was the only other specific point with regard to the first issue that I wanted to raise. And with that, the state would ask that this court affirm the defendant's conviction or I'm sorry, the trial court's finding of not not guilty, not a conviction. Yes, because he's in DHS, he's not in Department of Human or he's in DHS, not D.O.C. Correct. Due to that. All right. Well, thank you, counsel. Before we move on to Miss Burden, Justice Scholar, Justice Welch, do you have any questions? Not at this time. OK. Miss Burden, go right ahead with your rebuttal. So with respect to the statement, I would just like to add one thing that I may not have incorporated in my argument, is that the remedy that Mr. Broadway is seeking with regard to the statement is just a remand for a new discharge hearing where all the evidentiary rules again would apply at the discharge hearing. And so that is essentially the remedy that I think at a minimum this court should grant, because there is no doubt that this his statement was involuntary and it was a violation of Miranda. And again, the state below conceded that he was incapable of waiving his Miranda rights for the purposes of the second interrogation. And that's directly in conflict with the argument that he would be able to give a voluntary statement where he could knowingly waive all his rights. I'd like to just address some of the points that counsel made with respect to the sufficiency argument in this case. And it's important to understand how this case came about and that it all stems from an alleged incident in a camper and in the camper on the day of the event. I think it was August 7, 2018. L.B. was playing with her older brother Dakota, Mr. Broadway, and another adult relative, Sonny Broadway. This is what L.B. says, and this is, I believe, what the testimony of the older brother Dakota says. One thing that is entirely consistent in this case is that L.B. tells the child interviewer when the child interviewer asked her what happened in the camper. She says her brother Dakota told her to lie down, and she said the same thing in her trial testimony. But then after that, she didn't remember. But her testimony is that all these people are in the camper that her brother told her to lay down. Additionally, when the child interviewer questioned her and said what happened in the camper, L.B.'s statement was, I was hiding from my mother. In these types of cases, the words matter and the circumstances matter. The circumstances of the statement in this case were that the brother went out of the camper, said something to the mother, which was never admitted into evidence, but the mother testified and said she yelled for L.B. to come out. When L.B. came out of the camper, her mother said she wasn't upset, she wasn't crying, and she acted as though she was in trouble. And when the mother, her testimony at trial was not that then L.B. made this outcry statement of what had happened in the camper. It was that the mother said he was touching her yaya, which was the term they used for a vagina, and L.B. agreed with this. The mother then proceeded to check the six-year-old's vagina. There is some element of suggestibility surrounding this outcry statement. And in terms of considering this statement for purposes of the evidentiary, the value, and whether or not the state meets their very high burden of proving that this harmless beyond a reasonable doubt, or that the sufficiency of the evidence case, you know, the circumstances of this statement. Also, within the statement to the child interviewer, throughout the statement, L.B. was very clear that he touched her over her clothes. And she did not attribute anything to happening in the camper that day, but that he touched her over her clothes. Both of them were clothed with his hands. There is a statement in there that could maybe be conceived to support some of these allegations. But in a sufficiency case, and I would rely on judge for this case, that the overall circumstances of how this went on, how these outcry statements came out, and the evidence surrounded, it just does not make it sufficient to meet the state's burden beyond a reasonable doubt. And with respect to the penetration counts, under MAGET and this court's decision in private, this court is not to make an inference. And a lot of the state's arguments below are not to infer penetration. And I think that's kind of what the MAGET court stands for. The state has to prove it. And in this case, a lot of the statements for penetration were really based on innuendo. And it also should be noticed the language that the mother used in terms of L.B.'s statements were never used by the interviewer. In fact, L.B. said she did not have a term for the boy part. So there's some inconsistencies and discrepancies which must be considered. But Mr. Broadway, in some requests that this court remand for a new discharge hearing where his statement against him cannot be used because it is clearly in violation of Miranda and involuntary. Also, our position is that the state has not met their burden to prove beyond a reasonable doubt any of the allegations in this case. And I'm trying to look through here just to refresh my recollection. You were talking about the brother and about he had told the alleged victim said that it's not alleged now. It was the brother who made her lay down. And I'm trying to find I think she was five or six. She was six. Okay. And then and that's what I was looking for. How old how much older was the was her brother? I am not sure I get the impression that he was two to three years older. Not significantly. He was nine.  I mean, it's probably in there somewhere. And I'm just trying to look through and find it. Just just curious. So Justice Scholar, Justice Welch, do you have any final questions before we let counsel go for the day? No questions. No. Okay. Obviously, counsel, thank you so much for your arguments today. We will take the matter under advisement. We'll issue an order in due course. We hope you all have a great day. And more importantly, you all have a great holiday coming up. Thank you. Thank you.